L. Bishop Austin (SBN 175497)
L. Bishop Austin & Associates
3250 Wilshire Blvd., Ste 1500
Los Angeles, CA 90010
E-mail: lbishopaustin @sbcglobal.net
Telephone (213) 388-4939
Facsimile (213) 388-2411

Attorney for Debtors/Movants

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA  SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| *IN RE*<br><br>OSMIN CHEVEZ,<br><br>           Debtor. | Case No.:09-23771-GM<br>Chapter 13<br><br>MOTION TO AVOID LIEN OF CHASE HOME MORTGAGE; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT; DECLARATIONS OF OSMIN CHEVEZ AND REAL ESTATE APPRAISAL IN SUPPORT THEROF<br><br>DATE: November 23, 2010<br>TIME: 01:00PM<br>CTRM: 303 |

**TO:  THE HONORABLE GERALDINE MUND, UNITED STATES BANKRUPTCY JUDGE; AMY L GOLDMAND, CHAPTER 13 TRUSTEE, JP CHASE HOME MORTGAGE/WAMU, AND ALL INTERESTED PARTIES:**

## FACTS

## I.

## INTRODUCTION

The instant case was filed to save real property located at 37422 Yorkshire Dr, Palmdale, CA 93550 (hereinafter "subject Property"). The subject property was owned by OSMIN CHEVEZ, debtor, since October 18, 2009. Debtor obtained a first Mortgage in the amount of approximately $278,654.10, and a second mortgage in the amount of approximately $67,748.00 and a third mortgage in the amount of $25,499.00

The Property is worth no more than $148,000.00, based on a Uniform Residential Appraisal Report certified by a licensed California real estate appraiser reflecting the subject property's current value. Attached hereto labeled **Exhibit "A"** and incorporated by reference is the appraisal certified by Frank S. Sunada, California Real Estate Appraiser, of The Appraisal Shop., to that effect.

The lien of the first deed of trust is held by Bank of America Home Loans, LP., (hereinafter "BAC."). The lien of the first deed of trust is at least $278,654.10 based upon the attached monthly mortgage statement. (See **Exhibit "B"** attached to the Declaration of Debtor). The amount of the second deed of trust is held by Chase Home Finance,(hereinafter "Chase") is approximately $67,748.00 and the third deed of trust is held by Washington Mutual Bank, (hereinafter "WAMU") is approximately $25,499.63 based on debtor's mortgage statement (See **Exhibit "D"** attached to the Declaration of Debtor).

## II
## Argument

A. A SECURED CLAIM IS SECURED ONLY TO THE EXTENT OF THE VALUE OF THE COLLATERAL, AND UNALLOWED SECURED CLAIMS ARE VOID

11 U.S.C. Section 506(a) states that:
"An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to a setoff under section 553 of this title, is a secured claim to

the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim."

In the instant case, the subject property is encumbered by the first mortgage held by BAC in the amount of $278,654.10 and a second mortgage held by CHASE in the amount of $67,748.00.

However, the value of such claims on the subject property in which the estate has an interest is secured only to the extent of the fair market value of the subject property, which is approximately $148,000.00.

Thus, considering the amount of the secured claim of BAC. (first mortgage), the claim of second mortgage held by CHASE (second mortgage)is **entirely** an unsecured claim to the extent that the value of such creditor's interest is less than the amount of such allowed claim.

11 U.S.C. Section 506(d) states that:

"To that extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is **void**." (emphasis added)

As indicated above, the claim of **CHASE's** second mortgage is **unsecured** to the extent that said lien secured a claim against the debtor that is not an allowed secured claim and thus, must be avoided.

**B.   DEBTOR MAY REQUEST AND THE COURT MAY ENTER AN ORDER THAT VALUES COLLATERAL WHICH IS PROPERTY OF THE BANKRUPTCY ESTATE AND WHICH SECURES A CLAIM OF A CREDITOR AGAINST THE DEBTOR BY WAY OF A MOTION AFTER A NOTICED HEARING.**
Bankruptcy Rule 3012 states that the court may determine the value of a claim secured by a lien on property in which the estate has an interest on motion of any party and after a noticed bearing.

In Re Millspaugh, Randy D. and Millspaugh, Sharon K., 302 B.R. 90; 2003 Bankr., the court concluded that, "the attempt to strip off wholly unsecured liens may occur through a Rule 3012 valuation motion and does not require an adversary proceeding.

Such a motion may be subjoined with a plan brought on for
confirmation, or it may be separately asserted and prosecuted."
The Millspaugh decision also reasoned that, "Though such a
motion may be perused independently of a plan's confirmation, a
plan must comply with 1325 (a) (5) as to any secured creditor.
Thus, the issue of strip off would likely be resolved prior to
or contemporaneously with confirmation."

Here, the debtor submits as evidence to the value of the
subject property a Uniform Residential Appraisal Report prepared
by real estate appraiser, Frank S. Sunada of The Appraisal Shop,
in determining the value of the collateral which is property of
the bankruptcy estate and which secures a claim of creditor BAC
against the debtor (attached hereto as **Exhibit "A"**).

As explained in the Millspaugh case:

"It is important to recognize, as the majority and better
reasoned cases do, that stripping off a lien is simply a result
that flows under 506(d) from the valuation of the allegedly
unsecured mortgage. Valuation is a contested matter initiated by
motion pursuant to Rule 3012. As noted previously, this
District's model Chapter 13 plan acknowledges a debtor's ability
to raise and resolve certain "related motions" in the
confirmation process. Indeed, that model plan contemplates that
valuation decisions will be made under Rule 3012 as to any
secured creditor that may have a lien valued under 506(a)."

Accordingly, the debtor hereby requests this Honorable Court
to consider the instant lien stripping of CHASE's second
mortgage by and through the instant motion rather than by
adversary proceeding.

C.    THE LIEN SHOULD BE EXTINGUISHED AND RECONVEYED SINCE THE
PROPERTY IS WORTH $148,000.0 OR LESS AND THE FIRST DEED OF TRUST
IS $278,654.10 THUS THE LIEN IS AVOIDABLE AND SHOULD BE REMOVED.

The prevailing case law in our jurisdiction holds that Chapter
13 debtors are entitled to "strip off" totally unsecured junior
mortgages on a principal residence where the claims of the
junior lien holders are unsecured given that the value of the
principal residence is less than the balance owed on the first
mortgage. In re Lam, 211 B.R. 36 (9th Cir. B.A.P. 1997). In Lam,
the court held a Debtor's completely unsecured junior mortgage
could be stripped off his principal residence, holding that:

The Nobleman decision holding that section 1322(b) (2) bars a Chapter 13 plan from modifying the rights of holders of claims, secured only by the debtor's principal residence, does not apply to holders of totally unsecured claims. The extensions of the protections of section 1322(b) to wholly unsecured lien holders is contrary to the provisions of the bankruptcy code allowing the dischargeability of unsecured claims.

In re Lam followed the earlier decision o In re Geyer, 203 B.R. 726 (S.D. Cal 1996). In Geyer, the court sustained the Debtor's motion to avoid a lien brought under Bankruptcy Code Section 506(d), and held that a Chapter 13 debtor may strip off a lien on his or her primary residence when the lien holder's interest is totally unsecured, stating that:

... the term "secured claim" as used in section 1322(b) (2) has the same meaning as the term "secured claim" in section 506(a). Unless there is some equity to which the creditor's lien attaches, there is no allowed secured claim and no entitlement to the protections against modification contained in section 1322(b) (2). A Chapter 13 debtor may "strip-off" a lien on his or her primary residence under the plan or under section 506(d) when the lien holder's interest is totally unsecured.

In re Geyer, 203 B.R. 726, 729 (S.S. Cal. 1996).
Indeed, courts throughout the country agree that the decision of the United States Supreme Court in Nobleman v. American Savings Bank, 508 U.S. 324, 113 S.Ct. 2106, 124 L.ed 228 (June 1, 1993) which prohibits a creditor's claim on residential real estate from being bifurcated into secured and unsecured portions and the creditor's right under the unsecured portions from being modified does not prohibit a Chapter 13 debtor from stripping off a totally unsecured mortgage on a principal residence. In re Lam, supra; In re Geyer, 203 B.R. 726; Woodhouse v. Woodhouse, 172 B.R. 1 (D. Rhode Island, 1984); In re Settle, 164 B.R. 453, 456 (Bankr. E.D.N.Y. 1994); In re Williams 161 B.R. 27 (Bankr. E.D.Ky. 1993); In re Moncrief, 163 B.R. 492 (Bankr E.D.Ky. 1993) In re Hornes, 160 B.R. 709 (Bankr. D.Conn 1993)' In re Plouffe, 157 B.R. 198 (Bankr. D. Conn. 1993) (a literal reading of Section 1322(b) (2) does not exclude a mortgagee whose secured interest is zero).

In the case at bar, the Property to be retained in the Chapter 13 Plan is Debtor's residential real property. The value of the property is $148,000.00 or less, yet the value of the First Deed

of Trust is at least $278,654.10. Thus, the secured interest of the Second Deed of Trust is **zero** since there is absolutely no equity to which the Second Deed of Trust attaches. Therefore, the Second Deed of Trust held by CHASE should be extinguished and treated as a general unsecured claim for purposed of the instant Chapter 13 proceeding.

### D. IN RE DEWSNUP IS DISTINGUISHED FROM LIEN STRIPPING IN THE INSTANT CASE.

The Chapter 7 case of Dewsnup v. Timm, 502 U.S. 410, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992) has no application to this Chapter 13 case. The relevant cases are the Chapter 13 cases which Movant/Debtor cites above which turn on the many courts' interpretations of Section 1322(b)(2) of the Bankruptcy Code to mean that under Section 1322(b)(2) a Chapter 13 plan may modify the rights of secured claims, other than a claim **secured** only by security interest in real property that is the debtor's principal residence, and that this section, in light of Section 506(a), does not preclude modification by a Chapter 13 plan of the rights of holders of unsecured claims; to wit, junior mortgages which are completely unsecured.

To this end, Justice Scalie, in his dissent in Dewsnup, points out the difference between lien stripping in that Chapter 7 case and lien stripping in a Chapter 13 case when he states that:

"Respondents assume, for example, that a debtor in a Chapter 13 cannot strip down a mortgage place on the debtor's home; but that assumption may beg the very question the Court answers today. True, Section 1322(b)(2) provides that Chapter 13 filers may not "modify the rights of secured claims", that are "secured only by a security interest in real property that is the debtor's principal residence". But this can be and has been read, in light of Section 506(a), to prohibit modification of the mortgagee's rights only with respect to the operation of his claim that is deemed secured under the Code. see, e.g., In re Hart 923 F.2d 1410, 1415 (CA 10 1991); Wilson v. Commonwealth Mortgage Corp., 895 F.2d 123, 127 (CA 2 1990)."

Dewsnup, 502 U.S. 410, 428, 112 S.Ct. 773, 784.

In Dever v. Internal Revenue Service, 164 B.R. 132 (C.D. Cal. 1994), Judge Fenning held that in spite of Dewsnup, Chapter 7 debtors cannot use Section 506 to strip down liens on an under-secured claim, the Supreme court specifically reserved the question as to the applicability of its ruling in Dewsnup to

cases under the reorganization chapters. 164 B.R. 132, 133. In
*Dever*, the Courte discussed the issue of lien stripping in
Chapter 13 cases and cited the 10th Circuit case of *In re Hart*
wherein the Court reasoned:

> "The dispositive issue in this case is whether Eastland's
> Under-secured loan may be bifurcated into two claims by
> applying principles of Section 506(a) to the mortgage and then
> protecting only the secured claim by provision of Section
> 1322(b). We believe it can. 923 F.2d 1410,1413 (10th Cir.
> 1991)."

After ng *In re Hart*, in *Dever* the Court went on to state that:

> "If Section 506 does not permit debtors to bifurcate under
> secured claims and strip down liens to their collateral
> value, then all secured creditors would be freed of any
> concern that debtors could reduce the amount of their liens
> while retaining property. If Congress did not intend to allow
> lien stripping in general in Chapter 13 cases, then why would
> it bother to draft the exclusionary language of Section 1322.
> As Justice Stevens' concurring opinion in *Nobleman*
> emphasizes, the legislative history of Section 1322(b)(2)
> reflects Congressional desire to provide special protections
> on residential lenders. (citations omitted) The threat must
> be lien stripping, because no other threat is evident."

*Dever v. Internal Revenue Service*, 164 B.R. at 141.

While the question as to whether the Debtor herein may "strip
off" the instant wholly unsecured lien of BAC notwithstanding
the language of 1322(b)(2) that prohibits modifying the rights
of holders of security interest in Debtor's principal residence
has been long subject to debate, **IT WAS CONCLUSIVELY RESOLVED IN
FAVOR OF THE DEBTOR BY THE NINTH CIRCUIT** in *Zimmer v. PSB
Lending Corp. (In re Zimmer)*, 313 F.3d 1220 (9th Cir, 2002). *See
also Lam v. Investors Thrift (In re Lam)*, 211 B.R. 36 (9th Cir.
BAP 1997), *appeal dismissed*, 192 F.3d 1309 (9th Cir. 1999). *See
also*, *In re Samala*, 295 B.R. 380, 381 (Bankr, D.N.M. 2003)

(noting the majority of courts, including all circuit courts and bankruptcy appellate panels considering the issue, have concluded 13322(b)(2) does not apply to wholly unsecured creditors); In re Callander, 263 B.R. 567, 569-70 (Bankr. E.S.D. Ohio 2001) (surveying cases); In re German, 258 B.R. 468, 469-70 (Bankr. E.D. Okla. 2001)(same); **4 L. King, Collier on Bankruptcy P 506.03[7][c][iii], pp. 506-75 to 506-76 (rev. 15th ed. 1999)**(hereinafter "Collier")(stating "most courts" have concluded that a wholly unsecured interest may be stripped off in Chapter 13 consistent with Nobleman v. American Sav. Bank, 508 U.S. 324, 124 L. Ed.2d 228, 113 S. Ct. 2106 (1993)); **8 Collier P 1322.06[1][a], at 1322-21 to 1322-21** (noting several courts so holding, including *Zimmer* and *Lam* and cases from the Second, Fifth, Sixth and Eleventh Circuits and the First Circuit BAP). If a debtor can show that the putatively secured interest of the residential creditor is in fact totally unsecured, the debtor has the ability to strip off the lien.

*Zimmer* and *Lam* concluded that *Nobleman*, which held that 1322(b)(2) barred a debtor's attempt to "strip down" an under secured residential security interest, did not apply to holders of totally unsecured claims, thus validating a "strip off" of such security interests. See 313 F.3d at 1223-27; 211 B.R. at 40-41. Though *Lam's analysis* was adopted by several courts within the Circuit, BAP decisions are generally viewed as lacking binding effect. See, E.G., *Zimmer*, 313 F.3d at 1225; In re DeBoer, 99.3 I.B.C.R 101, 103, 1999 WL 33486710 (Bankr. D. Idaho 1999) This left the "strip off" question in flux until *Zimmer*.

### III.

### CONCLUSION

Based on the foregoing, it is respectfully requested that the Second Deed of Trust held by CHASE HOME MORTGAGE/WAMU/WAMU be ordered extinguished and deemed a general unsecured claim for the purposes of the instant Chapter 13 Plan.

Dated: October 05, 2010

Respectfully Submitted,   By:   /s/ L. Bishop Austin
                                 L. Bishop Austin, Esq.
                                 Attorney for Debtor

### DECLARATION OF OSMIN CHEVEZ IN SUPPORT OF

### MOTION TO AVOID LIEN

I, OSMIN CHEVEZ, do hereby declare that all of the following is true and correct to the best of my personal knowledge and if called upon as a witness I could and would competently testify to the truthfulness of all of the below statements

1. I am the Debtor in the instant bankruptcy proceeding, filed on October 18, 2009, Case No 09-2377-GM

2. I purchased the Property on or about May 30, 2003. My first mortgage on the Property was originally held by Countywide Home Loans, and is now held by Bank of America Home Loans, LP ("BAC"). I believe that value of the property at present is $148,000, as attested on Schedule A filed in my case and attached hereto as **Exhibit "B"**.

3. I am informed and believe the amount I currently owe on the first mortgage is approximately $277,201.38 based upon schedule D of the bankruptcy schedules. A true and correct copy of the invoice dated September 29, 2009 is attached hereto as **Exhibit "D"**.

4. The third mortgage on the Property is currently held or serviced by CHASE HOME MORTGAGE (herein "third Trust Deed").

5.  I believe the amount I owe on the Third Trust Deed is approximately $25,499.52 based upon an invoice obtained prior to filing bankruptcy. Attached hereto is a true and correct copy of the invoice dated May 25, 2007, identified hereafter as **Exhibit "D"**.

I declare under penalty of perjury that the foregoing is true and correct and that this declaration is executed this 11th day of October, 2010, at Los Angeles, California.

/s/ Osmin Chevez
Debtor